UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Brad Stevens,

         Plaintiff,

v.

Minnesota Department of Corrections, Commissioner Joan Fabian, Jeffrey Peterson, Douglas Erickson, Minnesota Department of Human Services, Commissioner Cal Ludeman, Gary Grimm, Nancy Johnston, Stacy Sonnek, Robert Elsen, Ryan Chukuske, and Jane and John Does, in their official and individual capacities,

         Defendants.

File No. 20-cv-2172 (ECT/DTS)

**OPINION AND ORDER**

---

Brad Stevens, *pro se*.

Rachel E. Bell-Munger, Minnesota Attorney General's Office, St. Paul, MN, for Defendants Joan Fabian, Jeffrey Peterson, and Douglas Erickson.

Ali P. Afsharjavan, Minnesota Attorney General's Office, St. Paul, MN, for Defendants Cal Ludeman, Gary Grimm, Nancy Johnston, Stacy Sonnek, Robert Elsen, and Ryan Chukuske.

---

Pro se Plaintiff Brad Stevens is civilly committed to the Minnesota Sex Offender Program ("MSOP"). He brought this case under 42 U.S.C. § 1983 against Defendants—employees of the Minnesota Department of Corrections ("DOC") and Minnesota Department of Human Services ("DHS")—in their official and individual capacities, alleging that they deprived him of his constitutional rights by filing false disciplinary

charges, revoking his conditional release, and transferring him to a state correctional facility in retaliation for activity protected under the First and Fourteenth Amendments. In his complaint, Stevens seeks declaratory relief for his official-capacity claims and damages for his individual-capacity claims. Defendants have filed motions to dismiss Stevens's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* DHS Defs.' Mot. to Dismiss [ECF No. 32]; DOC Defs.' Mot. to Dismiss [ECF No. 38], and their motions will be granted.

I[1]

Stevens's allegations concern the revocation of his conditional release in a criminal case, which resulted in his transfer from MSOP to a state correctional facility. Stevens alleges generally that the DHS Defendants—Cal Ludeman, former Commissioner of the Minnesota Department of Human Services; Gary Grimm, former Facility Director of MSOP; Nancy Johnston, former Clinical Supervisor and Director of MSOP and current Executive Director of MSOP; Robert Elsen, former social worker and current Clinical Supervisor at MSOP; Stacy Sonnek, Social Service Director at MSOP; and Ryan Chukuske, former Security Counselor at MSOP—"are liable for reporting disciplinary violations based upon false allegations . . . in retaliation for" exercising his "right [to] petition to redress his grievances" and "right to refuse medical treatment" while civilly

---

[1] In analyzing a facial challenge to subject-matter jurisdiction or a Rule 12(b)(6) motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In accord with these rules, the relevant facts are drawn from Stevens's complaint and are accepted as true.

2

committed at MSOP. Compl. ¶¶ 2, 7 [ECF No. 1]. He further alleges that the DHS Defendants and the DOC Defendants—Joan Fabian, former Commissioner of the Minnesota Department of Corrections; Jeffrey Peterson, former Executive Officer of Hearings and Release; and Douglas Erickson, former probation officer for the Minnesota Department of Corrections—"implemented, retained and carried out rules and regulations authorized by MSOP" that violated his constitutional rights. *Id.* ¶¶ 6–7; *see id.* ¶¶ 80–81, 106, 108–110.

In March 2003, Stevens pleaded guilty to attempted fourth-degree criminal sexual conduct in state court in Goodhue County, Minnesota. *Id.* ¶ 11. The Goodhue County District Court imposed an executed sentence of 36 months of imprisonment followed by a ten-year term of conditional release. *Id.* Approximately 20 months later, the state filed a petition to civilly commit Stevens as a sexual psychopathic personality and a sexually dangerous person. *Id.* ¶ 12. On November 22, 2004, pending a civil commitment hearing, Stevens was placed on intensive supervised release and transferred from a state correctional facility in Moose Lake, Minnesota, to MSOP. *Id.* ¶¶ 14, 16. On that date, Stevens signed a form acknowledging the conditions of his release, including requirements that he "successfully complete sex offender programming as established by the clinical director of [MSOP]" and "abide by all rules and regulations of the facility whose authority and control the offender is under." *Id.* ¶ 15, Ex. 1 [ECF No. 2-1 at 2].[2] Stevens alleges that Peterson

---

[2] Stevens submitted five exhibits with his complaint, including copies of his release conditions, a Minnesota Court of Appeals opinion in one of his prior cases, the report from his revocation hearing, an email concerning his readmission to MSOP in 2014, and a portion of a court transcript from a federal case in which he is a class plaintiff. *See* Stevens

3

approved mandatory supervised release terms for individuals committed to MSOP, *id.* ¶ 15, and that Fabian imposed those conditions of release upon him, *id.* ¶¶ 17–19. Upon his arrival at MSOP, pursuant to Minn. Stat. § 253B.03, subd. 10, Stevens also signed notices of his rights regarding treatment, including the right to refuse treatment, *see id.* § 253B.03, subd. 10(b)(1); *see also id.* § 144.651, subd. 12, and "the right to obtain treatment and services voluntarily," *see id.* § 253B.03, subd. 10(b)(2). Compl. ¶ 34.[3]

In April 2005, following a trial, the Goodhue County District Court determined that Stevens met the statutory criteria for being a sexually dangerous person and issued an initial civil commitment order. *Id.* ¶¶ 21–22; *see id.* ¶¶ 23–29. In August 2005, the Goodhue County District Court issued an order for Stevens's indeterminate commitment to MSOP. *Id.* ¶ 30; *see id.* ¶ 31. Stevens alleges that he "enjoyed the homelike treatment environment" at MSOP, which allowed him use of his own property, personal freedom to communicate with family and friends via phone and frequent in-person visits, the privileges of holding a driver's license and ordering food from restaurants, and the ability to be employed at a minimum-wage job. *Id.* ¶¶ 33, 35–37.

---

Decl., Exs. 1–5 [ECF No. 2-1]. No party has questioned the authenticity of these documents and they properly may be considered. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (stating courts "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" in resolving facial challenges to subject-matter jurisdiction and Rule 12(b)(6) motions to dismiss) (internal quotation marks and citations omitted).

[3]    This paragraph is located between paragraphs 19 and 20 on page 9 of Stevens's complaint but is erroneously labeled as paragraph 34.

4

On November 21, 2005, upon the expiration of Stevens's term of imprisonment, the Department of Corrections Hearing and Release Unit imposed the same conditions of release previously acknowledged by Stevens through the expiration of his term of conditional release on November 21, 2014. *Id.* ¶ 46. In his complaint, Stevens acknowledges that, under the applicable statute, conditions of release "may include successful completion of treatment and aftercare in a program approved by the commissioner" and that if an offender "fails to meet any condition of release, the commissioner may revoke the offender's conditional release and order that the offender serve all or a part of the remaining portion of the conditional release term in prison." *Id.* ¶¶ 43–44 (citing Minn. Stat. § 609.3455, subd. 8(b), (c)).

While at MSOP, Stevens "compiled 75 floppy disc[s] of legal research to aid in his access to the court and future actions" and "a list of p[e]er reviewed articles of how to redress his grievances while under civil commitment." *Id.* ¶ 34. Stevens informed MSOP treatment staff that petitions to the court challenging his prior convictions and civil commitment "prevented his participat[ion] in treatment" because he was concerned that discussing his offenses during treatment could result in perjury charges and that he "was not willing to discuss treatment options." *Id.* ¶¶ 52–53; *see id.* ¶¶ 57–60 (describing a habeas petition filed by Stevens in 2006). According to Stevens, "the MSOP Clinical Director" did not direct him to participate in treatment. *Id.* ¶ 39. Stevens alleges that Elsen informed him that he "did not have to admit to his crimes to do treatment" and that he had a right to refuse treatment. *Id.* ¶ 54. Stevens asked for clarification from MSOP staff on this issue. *See id.* ¶ 55. In February 2006, Johnston informed Stevens that "admitting to

5

and discussing [his] sexual offense [was] of course the very first steps and the foundation of treatment" but that "it [was his] personal decision to engage in this opportunity or not." *Id.* ¶¶ 55–56.

In October 2006, Elsen notified a DOC Hearing and Release Agent that Stevens was in violation of the terms of his conditional release that required him to "successfully complete sex offender programming as established by the clinical director of [MSOP]" and "abide by all rules and regulations of the facility whose authority and control the offender is under." *Id.* ¶ 61; *see id.*, Ex. 1. On October 23, 2006, Stevens was served with notice of a revocation hearing. *Id.* ¶ 62. Stevens alleges that these actions were done "maliciously in order to chill other patients from engaging in similar protective activities." *Id.* ¶ 64. Stevens alleges that when the charges were filed, "he had not received any behavioral reports that would indicate he required inpatient medical treatment at a secure facility for any sexual disorders." *Id.* ¶ 50. Grimm and Chukuske authorized "isolation status" and placed Stevens in administrative segregation pending the hearing. *Id.* ¶ 65.

A revocation hearing was held on November 1, 2006, before DOC Disciplinary Hearing Officer Paula Thielen. *Id.* ¶ 66, Ex. 3 [ECF No. 2-1 at 10–11]. Stevens was represented by counsel. *See id.*, Ex. 3. Erickson, the agent who investigated the charges, was present. *Id.* ¶ 67, Ex. 3. Chukuske testified at the hearing that Stevens had refused to participate in treatment at five meetings. *Id.* ¶ 69–70, Ex. 3. Chukuske also testified that he did not present Stevens with a treatment consent form because Stevens had told him that he was not willing to discuss treatment options. *Id.*, Ex. 3. Stevens's counsel argued that the charge for refusing to participate in treatment should be dismissed because disciplining

6

Stevens would violate his Fifth Amendment privilege against self-incrimination. *Id.* ¶ 71, Ex. 3. Thielen rejected that argument and concluded that Stevens had violated his conditional release as to that charge. *Id.* ¶ 72–73, Ex. 3. However, Thielen dismissed the other charge, concluding that Stevens had not incurred any violations of MSOP's rules. *Id.* ¶ 68, Ex. 3. Stevens's conditional release was revoked and he was transferred to a state correctional facility for the remainder of his conditional release term. *Id.* ¶ 75, Ex. 3. Sonnek authored a discharge summary explaining the reason for Stevens's discharge from MSOP, but Stevens alleges that her summary "did not evidence a diagnosable sexual disorder" requiring treatment. *Id.* ¶¶ 82–88.

Stevens alleges that he was transferred from a "home like environment" to a "punitive cell" and that while in prison, he was extorted out of his canteen, subject to routine name calling and harassment, and deprived of his personal property, legal work product, and other privileges and comforts he had while at MSOP. *Id.* ¶¶ 76–79; *see id.* ¶ 107. While in prison, Stevens contacted Fabian to inquire why he had been placed at MSOP instead of in outpatient sex offender treatment. *Id.* ¶ 91. Peterson responded instead, stating that the court had determined civil commitment "to be appropriate under the law and the factors unique to [his] case in 2005" and that Stevens was returned to DOC custody for violating his conditions of release. *Id.* ¶¶ 92–96. Stevens also requested sex offender treatment from the DOC "to chill any further disciplinary actions against him for refusing treatment or filing grievances." *Id.* ¶ 97. DOC Psychological Services Director Nancy Stacken reviewed Stevens's request and met with him. *Id.* ¶ 98. Stacken reportedly "found no mental health treatment needs" and informed Stevens that he would not be

7

provided sex offender treatment during his "8 year revocation time" because he was civilly committed.  *Id.*  Stevens was discharged from his criminal sentence and readmitted to MSOP on November 21, 2014.  *See id.* ¶¶ 99–100, Ex. 4 [ECF No. 2-1 at 13].

Stevens alleges that, separate from this case, he also is a class plaintiff in an ongoing class-action suit filed in this District against MSOP, *Karsjens v. Jesson*, No. 11-cv-3659 (DWF/TNL).  *Id.* ¶ 100.  As part of that lawsuit, MSOP's Executive Deputy Director Jim Berg provided the following testimony in March 2015:

> Q: Mr. Berg, you just said that one common condition of supervised release from DOC is that a patient complete sex offender treatment?
>
> A: That's one condition, yes.
>
> Q: Can a patient complete the MSOP's program?
>
> A: No, that's why we haven't kicked anybody out.  We haven't violated anybody for not completing treatment.

*Id.* ¶¶ 101–02, Ex. 5 [ECF No. 2-1 at 16].  Stevens alleges that Berg's testimony in that case shows that Thielen "relied on false allegation[s] to support a disciplinary charge of failure to complete treatment" at his revocation hearing and that Berg's "acts and omissions" invalidated and "favorabl[y] terminated" his violation.  *Id.* ¶¶ 103–05.

Stevens commenced this action on October 14, 2020.  He asserts three claims in his complaint: "First Amendment Retaliation (Retaliatory Discipline for the Right to Redress Grievances)," *id.* ¶¶ 111–28; "Fourteenth Amendment Retaliation (Retaliatory Discipline for the Right to Refuse Treatment)," *id.* ¶¶ 129–47; and "Eighth Amendment Retaliation (Retaliatory Discipline for Exercising Constitutional Rights)," *id.* ¶¶ 148–68.  In his

8

briefing, Stevens clarifies that he intends to assert the first and second claims against the DHS Defendants and the third claim against the DOC Defendants. Pl.'s Mem. in Opp'n to DHS Defs.' Mot. to Dismiss at 23 n.11 [ECF No. 48]; *see* Pl.'s Mem. in Opp'n to DOC Defs.' Mot. to Dismiss at 15–24 [ECF No. 47].

II

A

Defendants argue that Stevens's official-capacity claims for declaratory relief must be dismissed for lack of subject-matter jurisdiction. DHS Defs.' Mem. in Supp. at 9–10 [ECF No. 35]; DOC Defs.' Mem. in Supp. at 22–24 [ECF No. 40]. Absent waiver of immunity by the State or a valid congressional override, the Eleventh Amendment bars suit against a state or state agency "for any kind of relief." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *see also Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) ("The Eleventh Amendment provides states, and state agencies, with immunity . . . from suits brought by their own citizens." (internal citation omitted)). The Eleventh Amendment also bars claims for damages against state employees in their official capacities.[4] *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). This is because "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Graham,* 473 U.S. at 165); *see Will v.*

---

[4] Stevens does not seek monetary damages from Defendants in their official capacities. *See* Compl. ¶ 1; Pl.'s Mem. in Opp'n to DHS Defs.' Mot. to Dismiss at 15 n.7; Pl.'s Mem. in Opp'n to DOC Defs.' Mot. to Dismiss at 24 n.12.

9

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining a suit against a state official in his or her official capacity "is no different from a suit against the State itself"). Under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60); *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (cleaned up)). However, the exception is "narrow"; it "applies only to prospective relief" and "does not permit judgments against state officers declaring that they violated federal law in the past[.]" *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985) (stating "the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment")).

Stevens concedes that his official-capacity claims must be dismissed in his response to the DHS Defendants' motion. Pl.'s Mem. in Opp'n to DHS Defs.' Mot. to Dismiss at 9. The declaratory relief Stevens seeks is entirely retrospective. Compl. ¶¶ 169–70. He does not allege the existence of an ongoing violation of federal law in his complaint or seek any relief that might be characterized as prospective. *See generally id.* Accordingly,

Stevens's official-capacity claims against Defendants are barred by the Eleventh Amendment and will be dismissed.[5]

B

Defendants seek to dismiss Stevens's individual-capacity claims for retaliation under Rule 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S at 556). Pro se complaints are to be construed liberally,

---

[5] The caption of Stevens's complaint identifies the Minnesota Department of Corrections and Minnesota Department of Human Services as Defendants, but Stevens does not list those agencies in the section of his complaint identifying Defendants. *See* Compl. ¶¶ 6–7. To the extent Stevens intended to name those agencies as Defendants, all claims against them also are barred by the Eleventh Amendment and will be dismissed. *See Upsher v. Roy*, No. 19-cv-1805 (MJD/HB), 2020 WL 2527108, at *3 (D. Minn. Apr. 15, 2020) (stating the DOC is a state agency for purposes of Eleventh Amendment immunity), *report and recommendation adopted*, 2020 WL 2526498 (D. Minn. May 18, 2020); *Gardner v. Minnesota*, No. 16-cv-03999 (JNE/KMM), 2019 WL 1084714, at *3–4 (D. Minn. Jan. 15, 2019) (explaining the DHS is a state agency entitled to Eleventh Amendment immunity), *report and recommendation adopted*, 2019 WL 1086338 (D. Minn. Mar. 7, 2019).

11

but "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).

Defendants argue that Stevens's claims arise entirely from the revocation of his conditional release and consequent imprisonment and must be dismissed because they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). DHS Defs.' Mem. in Supp. at 10–11; DHS Defs.' Reply Mem. at 3 [ECF No. 51]; DOC Defs.' Mem. in Supp. at 11–15; DOC Defs.' Reply Mem. at 2–4 [ECF No. 50]. Under *Heck*, "[a] claim is not cognizable under section 1983 where a judgment in favor of the plaintiff would necessarily imply invalidity of the plaintiff's state conviction or sentence, unless the conviction or sentence has already been invalidated." *Wilson v. Lawrence Cnty., Mo.*, 154 F.3d 757, 760 (8th Cir. 1998); *see Heck*, 512 U.S. at 486–87; *see also Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) (stating § 1983 actions are "barred (absent prior invalidation)—no matter the relief sought," and "no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration"). The Eighth Circuit has applied *Heck* in cases in which a plaintiff challenges the revocation of supervised release. *Marlowe v. Fabian*, 676 F.3d 743, 747 (8th Cir. 2012); *see also Newmy v. Johnson*, 758 F.3d 1008, 1009–11 (8th Cir. 2014) (concluding § 1983 claim against parole officer for allegedly making a false report resulting in the revocation of his parole was barred by *Heck*); *Favors v. Hoover*, No. 13-cv-328 (JRT/LIB), 2014 WL 4954687, at *7 (D. Minn. Sept. 30, 2014) (concluding that if plaintiff succeeded in demonstrating that MSOP security counselor's reports or actions were false or retaliatory, he would "impugn or effectively invalidate his parole revocation,

which *Heck* bars"). To satisfy the so-called "favorable termination" requirement, a § 1983 plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[]" *Heck*, 512 U.S. at 486–87. The favorable termination requirement applies even when a plaintiff is no longer incarcerated. *Newmy*, 758 F.3d at 1010; *see Favors*, 2014 WL 4954687, at *6–7 (stating favorable termination requirement applied to MSOP plaintiff's challenge to his parole revocation and imprisonment).

Although claims based on "the fact or duration of [a plaintiff's] confinement" are not cognizable under § 1983, *see Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973), a plaintiff may bring "constitutional claims that merely challenge the conditions of . . . confinement," *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). Section 1983 claims that "do not function as collateral attacks on the judgment itself, such as a claim for 'using the wrong procedures' rather than 'reaching the wrong result,'" also are not barred by *Heck*. *Bandy v. Comm'r of Corr.*, No. 13-cv-209 (JRT/LIB), 2014 WL 28792, at *4 (D. Minn. Jan. 2, 2014) (quoting *Heck*, 512 U.S. at 482–83). However, *Heck* "bars challenges to procedures that, if invalidated, would 'necessarily demonstrate the invalidity of confinement or its duration.'" *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2016 WL 675708, at *10 (D. Minn. Jan. 29, 2016) (quoting *Wilkinson*, 544 U.S. at 82), *report and recommendation adopted*, 2016 WL 659710 (D. Minn. Feb. 18, 2016), *aff'd*, 670 F. App'x 434 (8th Cir. 2016).

Stevens's success on his retaliation claims would necessarily imply the invalidity of the revocation of his conditional release and resulting confinement. Stevens's claims are

13

premised on his allegations that the charges against him were false and retaliatory. *See, e.g.*, Compl. ¶¶ 2, 6–7, 80–81, 106, 108–110, 170. If Stevens were to demonstrate this, the revocation of his conditional release and resulting imprisonment effectively would be rendered invalid. In his complaint, Stevens contrasts the "homelike environment" of MSOP with the "punitive" environment of the state correctional facility, but he does not assert any claim that the conditions of his imprisonment were unlawful. Instead, these allegations serve only to support his claim for damages resulting from the revocation of his conditional release and consequent confinement.

Stevens alleges that he has met the favorable termination requirement because Berg's testimony in the *Karsjens* case invalidated the revocation of his conditional release. Compl. ¶ 105. However, Berg's testimony in another court proceeding is insufficient to satisfy the requirement. Berg does not reference Stevens's revocation or declare its invalidity. Even if he had, Berg, as MSOP's Executive Deputy Director and an employee of DHS, does not have the authority to invalidate Stevens's revocation. Rather, Minnesota law gives the commissioner of corrections authority in matters of conditional release. Minn. Stat. § 609.3455, subd. 8(c) (stating commissioner may "revoke [an] offender's conditional release and order that the offender serve all or a part of the remaining portion of the conditional release term in prison"); *see* Minn. Stat. § 609.109, subd. 7(b) (2002) (same) (prior version of statute in effect at the time Stevens's sentence was imposed). Stevens has not shown that the revocation of his conditional release has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized

to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[]"[6] *Heck*, 512 U.S. at 486–87.

In response to Defendants' arguments, Stevens cites a number of cases from the Fifth Circuit Court of Appeals for the premise that *Heck* does not "apply to bar a claim that a disciplinary charge and conviction were the result of a retaliatory action by a prison official." Pl.'s Mem. in Opp'n to DHS Defs.' Mot. to Dismiss at 13–14; Pl.'s Mem. in Opp'n to DOC Defs.' Mot. to Dismiss at 9–10. These cases are unpublished and not binding authority. Moreover, they are factually distinguishable because they concerned internal prison disciplinary proceedings, not revocation proceedings pertaining to a criminal sentence. *See Walker v. Savers*, 583 F. App'x 474 (5th Cir. 2014) (observing *Heck* did not bar prisoner's retaliation claim based on disciplinary charge for possession of contraband typewriter because the Fifth Circuit does not require a prisoner to show a favorable outcome of his disciplinary case to pursue a related retaliation claim); *Hanna v.*

---

[6]  Stevens has, in fact, filed two unsuccessful habeas petitions previously and raised issues pertaining to his revocation in one of them. *See Stevens v. Ludeman*, No. A07-1105, 2008 WL 2574475 (Minn. Ct. App. July 1, 2008) (affirming denial of habeas petition in which Stevens challenged his continued confinement at MSOP); *Stevens v. Roy*, No. 13-cv-13-639 (Chisago Cnty. Dist. Ct. Apr. 30, 2014) (denying habeas petition in which Stevens argued that his Fifth Amendment right against self-incrimination had been violated when his conditional release was revoked). Stevens also previously filed two federal civil rights actions in which he unsuccessfully raised various issues pertaining to his term of conditional release, revocation, and consequent imprisonment. *Stevens v. Roy*, No. 17-cv-4921 (SRN/TNL), 2018 WL 4489686 (D. Minn. Sept. 19, 2018) (dismissing § 1983 action challenging the lawfulness of Stevens's conditional release term, revocation, and imprisonment as *Heck*-barred); *Stevens v. Roy*, No. 16-cv-3807 (JRT/LIB), 2017 WL 8944013 (D. Minn. June 8, 2017) (recommending dismissal of Stevens's claims that the imposition and enforcement of his conditional release term was unconstitutional as barred by *Heck*), *report and recommendation adopted*, 2017 WL 4156999 (D. Minn. Sept. 19, 2017).

*Maxwell*, 548 F. App'x 192 (5th Cir. 2013) (concluding retaliation claim arising from internal prison disciplinary proceeding for defiance was time-barred because its accrual was not tolled under *Heck*); *Mahogany v. Rogers*, 293 F. App'x 259 (5th Cir. 2008) (concluding retaliation claim arising from internal prison disciplinary proceeding was not subject to favorable termination rule but that plaintiff had not adequately alleged retaliation). Though Stevens attempts to characterize his claims as arising from internal disciplinary decisions made by Defendants and his transfer to a new facility, the substance of his allegations belies this framing.

One final matter deserves comment. Defendants seek dismissal of Stevens's claims with prejudice. Claims barred by *Heck* are generally dismissed without prejudice to allow a plaintiff the opportunity to refile his § 1983 claims if he is later able to satisfy the favorable termination requirement. *Shelton*, 83 F.3d at 234. Here, Stevens can no longer bring a habeas action to challenge the revocation of his conditional release and imprisonment because he has completed his term of conditional release and been readmitted to MSOP. Nonetheless, the favorable termination requirement continues to apply. *See Newmy*, 758 F.3d at 1009–12. It is theoretically possible that Stevens could satisfy the requirement through another method, such as expungement by executive order or a declaration of invalidity by an authorized state tribunal. *See Heck*, 512 U.S. at 486–87. Accordingly, Stevens's individual-capacity claims for damages will be dismissed without prejudice.[7]

---

[7] In the alternative, Defendants argue that Stevens's claims are untimely under the six-year limitations period applicable to § 1983 claims under Minnesota law. DHS Defs.'

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. The DHS Defendants' Motion to Dismiss [ECF No. 32] is **GRANTED**;

2. The DOC Defendants' Motion to Dismiss [ECF No. 38] is **GRANTED**;

3. This action is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 28, 2021                       s/ Eric C. Tostrud
                                             Eric C. Tostrud
                                             United States District Court

---

Mem. in Supp at 7–9; DOC Defs.' Mem. in Supp. at 16–17; *see Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 n.3 (8th Cir. 1995).  State statutes of limitation for personal-injury torts apply to § 1983 actions.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  But "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."  *Id.* at 388.  A cause of action under § 1983 generally accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Id.* (internal quotation marks and citations omitted).  Under *Heck*, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  *Heck*, 512 U.S. 489–90.  Because Stevens's claims are *Heck*-barred and he has not satisfied the favorable termination requirement, his causes of action have not yet accrued.

17